SPALDING *v.* The BANK OF SUSQUEHANNA COUNTY.

Reasonable diligence is all that is required in searching for a paper to admit evidence of its contents. And the degree of diligence depends in a great measure on the importance of the lost document.

The admissions of the president of a bank, who was also its special agent, of his acts done in the course of his agency, are evidence against the bank.

Where bank-bills have been received as a collateral security, it lies on the creditor, in a suit against a surety, to show what has been done with them.

IN error from the Common Pleas of Bradford.

*July* 13. Assumpsit against the endorser of a note drawn by Clapp. The defendant offered the deposition of Clapp, the drawer, and, to show that he had no interest, offered to prove he had been released before his deposition was taken, but the paper was lost. His attorney proved that when he last saw the instrument, it was in Clapp's possession, who left the state shortly after the deposition was taken. His books and papers were left and searched by the witness to find this release. The witness had inquired of Clapp's wife, and received answer, that she had no business papers in her possession; he did not inquire for this particular paper and she was out of the state. A Mr. Satterlee handed the witness some papers; these were examined, but no inquiry was made of Satterlee for the release. It did not appear that Satterlee had any connexions with Clapp since the release was executed.

The court rejected secondary evidence of the contents of the release, on the ground that sufficient search for the original had not been made, and also rejected the deposition. It appeared that counsel had attended at the examination and made no objection as to competency.

The defendant further offered to prove by the declarations of the president of the bank (the plaintiff), made eighteen months after the event, that Clapp, the drawer of the note in suit, had deposited $1,000 in Towanda Bank bills with Storm and Morgan, a subsequent endorser of the note, as a collateral security for it. That afterwards, the president of the bank, as agent for it, received the note and collaterals from Storm and Morgan, and claimed the note in his own right, and paid over the collaterals to Clapp, the drawer, without consideration, and without the assent of the defendant.

Evidence had been previously given that the president, in conjunction with another, were authorized to settle with Storm and Morgan, and that the president was subsequently authorized to take charge of the bank and its effects.

The court considered these declarations were not made in the course of his duty or business for the bank, and rejected the evidence.

It appeared that the plaintiff had received a package of "Towanda paper," as a collateral on the note, and there was no evidence what had become of it—the court was of opinion this was no defence; that it lay on the defendant to show it had been lost through neglect, or collected, if he desired to avail himself of it.

*Patrick*, for plaintiff in error.—Reasonable diligence is all that is required in the search for a lost paper. That will depend on its importance: 4 Bing. 490; 2 Cain. 363; 18 Johns. 60; 1 Hare, 1; 5 Jur. 1007; Harr. Dig. 2877; 6 W. 164; 7 Pet. 100; 6 Binn. 59. In this case the paper was of little consequence, nor could there be any reasonable doubt as to its contents. The declarations of the agent, when acting for the bank, were evidence against it of the amount received, the purposes, and his authority to dispose of it.

*Case*, contrà.—There was not a sufficient search made for the paper. The president was not acting as the agent of the bank when he made the declarations: he was appointed with another to act, and one of them could not bind the corporation by his acts or declarations.

*July* 17.   COULTER, J.—The first error assigned is the rejection by the court of the deposition of N. Clapp.   The deposition was regularly taken, and Clapp was out of the jurisdiction of the court, at least could not be found on diligent inquiry.   The ground of rejection was that the witness was interested, being liable to the defendant below for the costs of the suit as maker or drawer of the note on which this suit is brought against Spalding, one of the endorsers.   The defendant proved that he had given the drawer, Clapp, a written release, duly executed, before the deposition was taken, and then proved that search was made for the original release, which could not be found, and offered secondary evidence of its contents.   The court, however, ruled out the deposition, because sufficient search had not been made for the original, nor adequate evidence of its loss given.   The judgment of this court, however, is that the deposition ought to have been admitted, because the search made for the original release, and the secondary evidence of its contents, were ample.   I do not see, for my part, how the defendant could have made a more diligent inquiry.   He left no place unexplored where any reasonable probability of its being found existed.   As it could not be found among the papers of the witness where they were left by him, the probability is that he may have carried it with him when he left the country, especially as a copy of it was found among his papers.   It may be observed that this paper was not of primary importance in the cause.   The issue did not hang upon it, nor was its production necessary to elucidate the rights or position of the adverse party. The authorities cited at bar clearly show that this circumstance is entitled to no inconsiderable weight.   It may be added also, that the plaintiff's attorney attended when the deposition was taken, made no objection, and cross-examined the witness, from which it may be inferred either that he knew a release had been given, or that it was not intended to object to the witness at the trial, and thus take the defendant by surprise.

The second error assigned is, that the court erred in rejecting the written offers of evidence by defendant, numbered 2 and 3.

The evidence in offer No. 2, ought to have been admitted, because it proposed to prove that the acts and declarations of William L. Post were done and made as agent of the Susquehanna Bank, and whilst he had possession of the note, on which this suit is instituted, and the bills of the Towanda Bank, which he, as agent of the bank, had received as collateral security at the same time that he received the note.   The endorser was entitled to the bene-

fit of this collateral security given by the drawer; and good faith required that the holder should not part with it to the prejudice of the endorser without his consent: more especially for the purpose of making new terms with the drawer. The evidence proposed to be given formed in fact part of the *res gestæ*, without which full justice could not be done between the parties. William L. Post, beside his being the agent, was the president of the bank, the financial head; and these acts and declarations were within the scope of his authority, as an officer, and on that account ought to have been admitted: 2 Hall, 445. In addition to this case cited at bar, may be added the case of the Westmoreland Bank *v.* Klingensmith, 7 Watts, 523, where the endorser went to the cashier of the bank, and told him the drawer was about to send personal property away, and requested the cashier to issue execution on the judgment which the bank had obtained against the drawer, which the cashier refused to do, and said he would discharge him from his endorsement, and look to the drawer; it was held that this was a good discharge of the endorser.

The evidence covered by offer No. 3 ought to have been admitted, being of the same character as that proposed to be given in No. 2.

The third and last error assigned is, that the court erred in charging the jury that the plaintiff was entitled to recover. It is unnecessary, and would be perhaps out of place, to give any opinion on this assignment of error, as the cause will go back to be tried on a new and different state of facts. But in the very brief charge of the court, they instruct the jury that if the defendant wished to avail himself of the collateral security of the Towanda bills, he was bound to show, that they had been collected by the Susquehanna Bank, or were lost by carelessness; otherwise, the plaintiff was not bound to give any account of them. In this we think there was error. These bills were, I presume, the ordinary bank-bills or notes of the Towanda Bank. Bank-bills, or what is called relief notes, well understood by that name, pass from hand to hand, as money. It does not appear at what discount those bills then were, or whether or not they were current. But they were, doubtless, of some value, or they would not have been received as collateral security, and might have been passed off by the Susquehanna Bank, in which case it would have been impossible for the defendant to have traced them. Indeed, I know of no practicable means by which he could have shown the payment or loss of the bills. But it was very easy for the Susquehanna Bank to give an account of what was done

with them.   Good faith requires that they should do so : and the law will hold them to it.

Judgment reversed, and a *venire de novo* awarded.